

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

A. G. FILE NO.

Honorable Fred Erisman
Criminal District Attorney
Gregg County
Longview, Texas

Dear Sir:                    Attention: Mr. Mike Anglin

                             Opinion No. O-2216.
                             Re: Whether or not the proposed
                                 movie contest is a lottery.

We have for reply your letter of April 19, 1940, requesting the opinion of this department as to whether or not the operation of a series of movie contests under the plan set out in your letter is a violation of the penal laws of this state against the operation and maintenance of lotteries. The plan described in your letter is as follows:

> "It is proposed, as an advertising feature, to inaugurate a series of contests to be conducted by a local theater management,—but the management does not wish to contravene the law, and I am advised the contest is featured for the art or skill involved, under the following set-up:

> 1.

> "A cash award ($50.00 for instance) is provided by the management, to be given away on the night advertised to some patron in the audience (or divided pro-rata if more than one winner should qualify). If there be no winner, the award is carried over to the week following, augmented by some additional amount.

> 2.

> "With each admission ticket, the patron is given a card, bearing numbers from 1 to 120, arranged in a circle - such as specimen enclosed, marked Exhibit 'A'.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Fred Crisman - Page 2

### 3.

"On the stage will be placed a large board on which will be imposed the same dial (on larger scale) as represented in Exhibit 'A' - but the marginal numbers will at first be covered by a disc extending just over the periphery of the dial. The disc is removable and is attached only to a center pin which permits it to revolve.

"On the disc there is an arrow head pointed to the outer rim.

### 5.

"At some pre-announced time, during show intermission, the board or stand with the large replica of dial shown in Exhibit 'A' is placed on the stage for full view of the audience. The line between No. 1 and No. 120 is directly downward and _so_ remains.

### 6.

"The revolving disc, with arrowhead marker, is then placed over the dial, and by a procedure which may vary in detail, but free from calculation, the disc is made to revolve briefly. When it comes to rest the arrowhead will indicate a point on the dial, which is then identified by a colored sticker visible to the audience, tho the actual dial number is not visible. This spinning and marking is repeated until five different markers are shown.

"This procedure is a prelude to the contest, but not a part thereof.

### 7.

"The contest itself now begins. Full lights are put on in the auditorium and an alloted time is announced during which the audience may study the markers on the stage dial and by comparison with the replica, which each one has (Exhibit 'A') there remains the calculation of dial numbers to correspond with the markers on stage dial in which there is only to be gauged the degree of variation from the four cardinal numbers, viz: 1, 30, 60, 90.

Honorable Fred Erisman - Page 3

8.

"The contestant enters the five numbers se-
lected in his calculations (a) on the dial marked
part of his card, (b) on the stub bearing same
serial number.

9.

"Contestant detaches and keeps the stub, but
the marked card is taken up by the usher and all of
these taken to the stage.

10.

"When all cards are in, the disc is removed
and correct numbers on the dial as pointed by the
five markers are announced.

11.

"The holder of any stub (subject to verifica-
tion from its counterpart) bearing the same five
numbers as shown by markers on the stage dial is
entitled to the award then and there. More than
one such holder shares proportionately.

"To enable you to trace the steps involved in
this contest, enclosed find a sample of dial to be
set up on the stage (Exhibit 'B') and a circular
card to represent the disc (Exhibit 'C'). After
the disc is placed over the dial and the marginal
numbers covered, you can see how a conspicuous
marker of spear-head shape can be pasted or at-
tached to the board or background after the arrow
on the disc is spun and has arrived at a stop.
The board or back-ground will be large enough for
markers visible throughout the theater.

"The author of this contest advances the
idea that accurate determination of the five
numbers making up the winning combination is
simply an engineering problem; that skill alone
is the controlling factor and that accuracy and
proficiency are correlatives.

"While copyrighted under various names, in-
cluding 'Bank Night Contest,' I am asked to dif-

Honorable Fred Erisman - Page 4

ferentiate in this case, because of the radical departure from other patterns, wherein chance predominates.

"In view of the holdings in Boatwright v. State, 38 SW (2d) 87 and McRae v. State, 81 SW 741, it would appear that such scheme, as above described, would not be a violation of the law."

Section 47 of Article III of the Constitution of Texas reads:

"The Legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this state, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing, in other states."

Pursuant to such command, the Legislature passed Article 654 of the Penal Code, which reads as follows:

"If any person shall establish a lottery or dispose of any estate, real or personal, by lottery, he shall be fined not less than One Hundred ($100) Dollars nor more than One Thousand ($1000) Dollars; or if any person shall sell, offer for sale or keep for sale any tickets or part tickets in any lottery, he shall be fined not less than Ten ($10) Dollars nor more than Fifty ($50) Dollars."

In City of Wink vs. Griffith Amusement Company, 100 S. W. (2d) 695 (Tex. Sup. Court), the court said:

"The State Penal Code does not define a lottery, but our courts have interpreted it in accordance with public usage, to mean a scheme or plan which provides for a distribution of prizes by chance among those who have paid, or agreed to pay, a consideration for the right to participate therein. 28 Tex. Jur. p. 409, Sec. 2, and cases cited in the notes."

This department has on several occasions passed on the question of what constitutes a lottery, holding in:

(1) Opinion O-428, that a number system used by a theatre where each seat in the theatre is

Honorable Fred Erisman - Page 5

numbered and a ticket is selected or drawn from
a number of tickets containing all the numbers
on the seats and a money award or other thing of
value is given to the person sitting in the seat
that has a corresponding number with the number
drawn is a "lottery" and the operation thereof
is a violation of Article 654 of the Penal Code.

(2) Opinion O-967, that a scheme whereby, in
substance, a theatre owner gives a prize to some
patron of the theatre present after a drawing from
which some patron's automobile license number may
be selected, under the facts presented, consti-
tutes a violation of the lottery laws of this state.

(3) Opinion O-1174, that it is a violation of
the law for the merchants of a given town or com-
munity to give their customers tickets with each
purchase of merchandise from them, which tickets
are good for chances upon merchandise or money given
away at drawings, held periodically in the said
town or community.

(4) Opinion O-1200, that the "Aces Quiz Night"
scheme or plan (under the facts stated to this of-
fice) is a "lottery" and in violation of Article
654 of the Penal Code of this state.

(5) Opinion O-1329, that a scheme whereby, in
substance, a theatre buys the fingerprints of a
citizen of the community by selection of one fing-
erprint from the files of the theatre, is a viola-
tion of the lottery laws of this state.

(6) Opinion O-1336, that a scheme whereby,
in substance, a "suit club" gives credits in trade
to winning contestants for completing a sentence,
etc., constitutes a violation of the lottery laws
of this state.

(7) Opinion O-1789, that a theatre program
featuring the "Doctor I.Q." radio broadcast over
a network is not a violation of the lottery stat-
utes of this state.

(8) Opinion O-1819, that a theatre operator
conducting a scheme whereby questions submitted
by the patrons of the theatre are drawn from a
box, and the patrons whose questions are drawn

Honorable Fred Erisman - Page 6

and asked receive one dollar each, is guilty of operating a lottery in violation of Article 654 of the Penal Code.

(9) Opinion O-1858, that a scheme whereby, in substance, a theatre gives a prize to a person if he answers a question correctly, the name of such person being drawn from a container of signed entry blanks, is a violation of the lottery laws of this state.

(10) Opinion O-2063, that a scheme whereby, in substance, a theatre pays $25 to a person who files his application card with the theatre and whose card number is thereafter called by members of the audience, is a violation of the lottery laws of this state.

In the case of Griffith Amusement Company vs. Morgan, 98 S. W. (2d) 844, it was held that the elements essential to constitute a lottery are (1) a prize in money or thing of value, (2) distribution by chance and (3) payment, either directly or indirectly, of a valuable consideration for the chance to win the prize. See also City of Wink vs. Griffith Amusement Company, supra; Featherstone vs. Independent Service Station Association, 10 S. W. (2d) 124; Peak vs. United States, 61 Fed. (2d) 973; Grant vs. The State, 112 S. W. 1068. In State vs. Randall, 41 Tex. 296, and Holman vs. The State, 47 S. W. 850, it was held that any scheme for the distribution of prizes by chance is a lottery. Accordingly, the "Bank Night" scheme (City of Wink vs. Griffith Amusement Company, supra), the "Buck Night" scheme (Robb and Rowley, et al. vs. The State, 127 S. W. (2d) 221), and the "Noah's Ark" scheme (Smith vs. The State, 127 S. W. (2d) 297) have all been held to be lotteries.

We believe that the essential elements of the lottery are presented by the facts set forth in your letter. The theatre provides a cash award or prize for those patrons fortunate enough to arrive at the correct numbers on the circular disc on the stage. Of course, the element of consideration, the direct or indirect furnishing of which is also necessary to constitute a lottery, is present. Each patron has directly paid a consideration by purchasing his ticket to the theatre, which also represents consideration for the right to participate in the prize. Cole vs. State (Tex. Ct. Crim. App.), 112 S. W. (2d) 725. It is the third element, chance, that raises a doubt in your mind as to whether or not this is a lottery, and in this connection you cite the case of Boatwright vs. State, 38 S. W. (2d) 87, and McRae vs. State, 81 S. W. 741, in support of the proposition that these are contests of skill

Honorable Fred Erisman - Page 7

rather than chance.

In the Boatwright case, the Court of Criminal Appeals held that a punch board, wherein were placed different checkers problems, the same to be completed by the participant after paying a fee for the privilege of participating, did not constitute a lottery, even though prizes were awarded those working out the best solution. However, the court emphasized the fact that the only element of chance there involved was the nature of the checker problem to be drawn. There any person might participate in the game, and every person who purchased a checker problem stood on an equal footing, based upon his knowledge or inaptitude in the science of checkers. The element of skill predominated.

Likewise, in the McRae case, whether or not a player won a knife depended entirely upon his skill in tossing a hoop onto the knife rack. The element of skill predominated.

It is stated in 38 Cor. Jur. at page 291:

"The rule generally followed in the United States is that the word 'lottery' includes those schemes wherein chance is the dominant factor in determining the result, although it may be affected to some degree by the exercise of skill or judgment, but the rule, known as the 'pure chance doctrine,' that a contest is not a lottery unless its issue depends entirely on chance, is supported by some authorities in this country and is of general appreciation in England and Canada."

See also 17 Ruling Case Law, p. 1225.

In State Ex rel. McKittrick, vs. Globe-Democrat Publishing Company (Sup. Ct. Mo.), 110 S. W. (2d) 705, 113 A. L. R. 1104, defendant newspaper conducted a "Famous Names" contest, wherein a list of titles was printed beneath a series of cartoons, contestants to select the one most appropriate to each of the cartoons. The court held that since more than one title would be equally appropriate, the dominant element of chance necessary to make the puzzle contest a lottery existed.

See also People Ex rel. Ellison vs. Lavin, 171 N. Y. 164, 71 N. E. 753, 756, 66 L. R. A. 601, 1 Ann. Cases 165, where prizes were to be awarded to those making the closest estimate of the number of cigars on which the United States

Honorable Fred Erisman - Page 8

would collect a stamp tax during a specified month, and the contest was held to be a lottery. Similar rulings were made in Stevens vs. Times-Star Company, 72 Ohio State 112, 150, 73 N. E. 1058, 1061, 106 Am. St. Rep. 586, 593, and Waite vs. Press Publishing Association, 155 Fed. 58, 61, 11 L. R. A. (New Series) 609, 12 Ann. Cases 319, where guessing contests as to the popular vote in a presidential election were held lotteries. In both cases the court said:

"It is true that one acquainted with the results of the elections of the state in previous years and educated in politics would have some advantage over one ignorant in those respects, yet it must be apparent even to the casual observer that the result would depend upon so many uncertain and unascertainable causes that the estimate of the most learned would be after all nothing more than a random and undecisive judgment. In the sense above indicated there is an element of skill, possible certainty, involved, but it is clear that the controlling predominating element is mere chance."

In the McKittrick case, supra, the court said:

"But such is not the true general rule. As was said in People Ex rel. Ellison vs Lavin, supra, if a contest were solely between experts, possibly elements affecting the result which no one could foresee might be held dependent upon judgment; but not so when the contest is unrestricted. What is a matter of chance for one man may not be for another. And as Mr. Justice Holmes said in Dillingham vs. McLaughlin, 264 U. S. 370, 373, 44 Sup. Ct. 362, 363, 68 L. Ed. 742, 'What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law.' Obviously, if some abstruse problem comparable to the Einstein theory were submitted to the general public in a prize contest on the representation that no special training or education would be required to solve it, the contention could not be made, after contestants had been induced to part with their entrance money, that the element of chance was absent, because there were a few persons in the world who possessed the learning necessary to understand it."

It is stated in People vs. Lavin, 117 N. Y. 170, 71 N. E. 755, 66 L. R. A. 601:

Honorable Fred Krisman - Page 9

"The test of the character of the game
is, not whether it contains an element of
chance or an element of skill, but which is
the dominating element that determines the
result of the game."

In Hudelson vs. State (1883), 94 Ind. 426, 48 Am.
Rep. 171, the contest was to guess nearest to the number of
beans contained in a glass globe; it was contended that the
element of skill here predominated over the element of chance.
The court held the contest to be a lottery and said:

"The contention of appellants' counsel
is, that the enterprise, as set out in the
publication, is not a lottery, nor in the na-
ture of a lottery or gift enterprise. That
to arrive at the correct number of beans in
the glass globe is not a matter of chance, but
a mathematical calculation. We cannot concur
in this view. An expert mathematician might
compute the dimensions of the glass globe with
a reasonable degree of certainty. Necessarily,
the result could be but approximately correct.
To be mathematically correct the exact thick-
ness of the glass would have to be known. This
exactness could not be attained by an observa-
tion of the sealed globe. Here would necessar-
ily be an element of guessing. And if the exact
size of the globe were known, it would be utter-
ly impossible by the application of mathemati-
cal rules, or by any other means, to calculate
the number of beans contained in it. The size
of the several beans, so far as they could be
observed, would be a matter of pure guessing.
And besides only those on the surface and next
to the glass could be seen. Those in the center
might be smaller or larger. In short, there
could be no fixed or definite fact or quantity
upon which to base a mathematical calculation
or determination. The number of beans in the
glass could be nothing else than a matter of
guessing. An expert mathematician might more
nearly fix the size of the globe than an entire-
ly uneducated person. And so he, and persons
of better judgment, might more nearly fix the
number of beans in the globe than persons of
less judgment. Yet the exact number would be
a mere matter of guessing. That anyone should
guess the correct number would be a matter of
the merest chance, because there are no means

of attaining to a certainty."

We believe that these cases are similar to the case at hand, and that the element of chance predominates over whatever elements of skill may exist. While one skilled in mathematics and engineering might more easily guess or calculate the numbers marked on the circular disc on the stage of the theatre by guessing the angles thereby formed, in the final analysis one making such a calculation--even one skilled in mathematics and engineering principles--would be performing no more than a guess. There are no certainties known to the man performing the calculation on which mathematical principles could be based, so as to arrive at the exact result. In other words, in order to be mathematically correct, the contestant would have to know the size of the circular disc on the stage of the theatre, the exact size of his entry card in his hand, and the exact ratio between the circle printed on his entry blank and the circular disc on the stage of the theatre. In addition, the exact angle made on the circular disc on the stage of the theatre would have to be measured and imposed upon the card, the entry blank, in his hand. No such exact calculations are available to an ordinary patron casually observing this paraphernalia from his seat in the theatre. Indeed, few patrons of the theatre will be so skilled in engineering and mathematical principles as to use any such method suggested in calculating the result. Nor do we believe that this was the intention of those conducting the contest. As in the bean contest, those participating must of necessity guess the numbers indicated by the markers, and the best guesses will win. We hold that this is the third element of chance necessary to constitute a lottery.

Consequently, you are respectfully advised and it is the opinion of this department that the movie contest plan, under the facts submitted in your letter, constitutes a lottery such as is condemned by Article 654 of the Penal Code of this state.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*

Walter R. Koch
Assistant

By *James D. Smullen*

James D. Smullen

APPROVED APR 29, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

JDS/oe

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN